UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

BRIAN KWARAMBA, PhD,                          Civ. No.

        Plaintiff,

        -against-

GREEN THUMB INDUSTRIES INC.,                  **VERIFIED COMPLAINT**
FIORELLO PHARMACEUTICALS INC.,
ERIC SIROTA, REBECCA BROWN,                      Jury trial demanded
MARLA LACY, CAPRICE READER,
MICHAEL BASILE, JAMES DELANEY,
EUNICE KIM, and KATIE OGDEN,

        Defendants.
———————————————————————x

This case is brought by plaintiff Brian Kwaramba, PhD ("Plaintiff" or "Dr. Kwaramba")

against the above-named defendants under Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e et seq, the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to

297, the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, and New

York Labor §§ 215, 240 and 241, for employment discrimination on the basis of race, color, and

national origin; retaliation for a protected activity under Title VII and the New York City and

State Human Rights Laws, and the New York Labor Law, and for having been unlawfully

subjected to a hostile working environment.

## PARTIES

1.      Plaintiff BRIAN KWARAMBA, PHD, who resides in Clifton Park, New York

12065, received his Doctor of Philosophy with a major in chemistry from the Oklahoma State

University in August 2014. From December 2018 until September 1, 2020, Dr. Kwaramba was

employed as Production Laboratory Director & Quality Assurance Officer in charge of all

laboratory operations of defendants in New York State. Plaintiff is African and his country of national origin is South Africa.

2.      Defendant GREEN THUMB INDUSTRIES INC. ("GTI") is a national cannabis consumer packaged goods company and retailer. It has 13 manufacturing facilities, licenses for 95 retail locations and operations across 12 U.S. markets. Established in 2014, GTI employs approximately 1,200 people. Upon information and belief, GTI acquired Fiorello in or about August 26, 2019 in a $59.6 million cash and stock transaction. Prior to that date, and throughout plaintiff's period of employment, GTI was closely affiliated with Fiorello and, upon information and belief, provided over $10 million for the startup monies for Fiorello. GTI, which trades on the U.S. over-the-counter-market under the ticker symbol GTBIF and on the Canadian Securities Exchange as GTII, has its main offices located at 325 W. Huron Street, Chicago, Illinois 60654.

3.      Defendant FIORELLO PHARMACEUTICALS INC. ("Fiorello") is a New York corporation established on May 27, 2014. It is one of approximately 10 companies licensed to operate a medical marijuana company in New York State. Its assets include a manufacturing and cultivation facility in Schenectady County and retail stores in Manhattan, Nassau County and elsewhere within the State. Its principal offices are located at 12 East 49th Street, New York, New York 10017.

4.      Defendant ERIC SIROTA is, upon information and belief, the Chief Executive Officer of Fiorello and, during all relevant times, was plaintiff's direct supervisor.

5.      Defendant REBECCA BROWN was, at all relevant times, a Vice President of Fiorello, and then GTI.

6.       Defendant MARLA LACY was, at all relevant times, the Director of Operation for Fiorello and/or GTI.

7.       Defendant CAPRICE READER was, at all relevant times, an employee of Fiorello and/or GTI, who worked in the Human Resources Department.

8.       Defendant MICHAEL BASILE was, at all relevant times, a security employee of Fiorello and/or GTI.

9.       Defendant JAMES DELANEY was, at all relevant times, a security employee of Fiorello and/or GTI.

10.       Defendant MARK KASABUSKI was, at all relevant times, a pharmacist employed by Fiorello and/or GTI.

11.       Defendant EUNICE KIM was, at all relevant times, the Vice President of HR for Fiorello and/or GTI.

12.       Defendant KATIE OGDEN was, at all relevant, the Pharmacy Dispensary Manager for Fiorello and/or GTI.

## RELEVANT FACTS

13.       Starting in or about December 2018, Plaintiff worked at defendant Fiorello Pharmaceuticals ("Fiorello") and then defendant Green Thumb Industries ("GTI") (collectively referred to as "the Company") as the Production Laboratory Director & Quality Assurance Officer in charge of all laboratory operations in the New York City Office. The Company operated out of a central office in New York City, located at 123 East 49th Street, New York,

New York 10017, pursuant to a medical cannabis license granted by the State of New York and servicing the entire State of New York.

14.     Prior to taking full ownership of Fiorello in or about August 2019, GTI was a strategic partner of Fiorello, and, upon information and belief, contributed over $10 million in startup money for Fiorello. In addition, prior to August 2019, supplies for some of Dr. Kwaramba's work were provided through GTI's accounts, and plaintiff, at times, worked with GTI's Chicago corporate office to obtain materials.

15.     In or about April 26-30, 2019, Dr. Kwaramba became aware that a subordinate employee, Brianna Lydon, was being sexually harassed by one of Fiorello's contractors, Darwin Millard. When plaintiff recommended to Ms. Lydon that she contact Human Resources ("HR"), his direct supervisor, Eric Sirota, CEO of Fiorello, HR representative Caprice Reader, and Maria Lacy, the Director of Operations for Fiorello and GTI, became irate with him for encouraging her to report the incident. The incident was the start of a continuing pattern of hostility in the work environment and retaliation by plaintiff's employers.

16.     Defendant GTI was well aware of the sexual harassment issue that plaintiff had brought to the attention of Fiorello's HR Department and Fiorello management, even though it was prior to the takeover of the Company by GTI. Both Fiorello and GTI management were also well aware that the contractor who was responsible for the sexual harassment, Darwin Millard, engaged in a campaign of harassment against plaintiff for having properly acted on behalf of the victim, Ms. Lydon. Mr. Millard had a close connection to plaintiff's direct supervisor, defendant Eric Sirota, and also had (and still does have) close connections with GTI, through defendants Rebecca Brown, GTI's Vice President, and through defendant Marla Lacy, Fiorello's (and then GTI's) Director of Operations.

17.     On or about July 2, 2019, HR finally launched an investigation regarding Ms. Lydon's report of sexual harassment. However, upon information and belief, the investigation covered up the sexual harassment and, instead, concluded that Ms. Lydon was having "personal problems." Plaintiff corrected this factual error and signed an accurate report of the incident.

18.     Upon information and belief, on or about August 15, 2019, Ms. Lydon was forced to write a resignation letter and was escorted out of the building by security in retaliation for reporting the sexual harassment and hostile work environment she had been subjected to.

19.     Plaintiff was subjected to severe and sustained retaliation for having correctly advised Ms. Lydon to report the improper conduct to the Company's HR Department. He also suffered discrimination based upon his race (black) and national origin (South African) while at the Company. Among other things, he was subjected to a demotion, with a security guard assigned as his supervisor. His academic credentials were also questioned, based on racially-motivated comments about his academic and other qualifications. In addition, xenophobic comments were made about plaintiff's family and background; the "n-word" was used in his presence; and he was cut off from raw material supplies that he needed to produce the Company's products.

20.     Starting in or about August 2019, defendant Rebecca Brown deliberately excluded Dr. Kwaramba from crucial meetings pertaining to production. In response, plaintiff appropriately complained to HR and to Ms. Brown regarding these retaliatory actions.

21.     Further, in continued retaliation, on or about September 25, 2019, Dr. Kwaramba was forced to endure racially-charged comments from one of defendants' security employees, defendant Michael Basile, who was emboldened after the prior attempt to have him supervise

plaintiff; defendant James Delaney, a second security guard; and a Pharmacist, defendant Mark

Kasabuski, including statements to the effect of, [h]ow may PhDs does one need to send the

proper medical products?"; "the entire caravan is now here in America" in regards to plaintiff's

relocated family; calling plaintiff's PhD "an affirmative action degree" that was "bought outline

and not even from our country;" and using the "n-word" in a story while in his presence. Dr.

Kwaramba asked the defendant employees making such comments to stop doing so, and he

reported this offensive conduct to his GTI supervisor, defendant Rebecca Brown first, and then

to defendant Eunice Kim, the Vice President of HR for GTI. Both of them promised to look into

it; however, again nothing was ever done by management of GTI to try to prevent this conduct or

to discipline the offenders.

22.     In or around October 2019, in further retaliation, Dr. Kwaramba's raw material

supply necessary for the production of medical cannabis was entirely cut off, which slowed

down his production and eventually prevented any production of the product from occurring.

23.     On or about January 15, 2020, additional racially discriminatory statements were

made by the security supervisor, defendant Michael Basile, who defendant Brown had

improperly attempted to appoint as plaintiff's supervisor. The statements to plaintiff included the

following: "[h]ow was your first time in Africa," and "how about them Africans," again referring

to his family as a "caravan." Further, his PhD was again called an "affirmative action degree"

that was "bought online and not even from our country." This security supervisor also repeatedly

used the "n-word" in a story while he was present, and refused his request that he stop doing so.

24.     Plaintiff reported this behavior to the GTI Integrity Hotline, since HR and his

supervisor had not taken any action up to this point. Upon information and belief, the Integrity

Hotline funnels complaints through GTI's HR Department. Defendant Brown sent an email that

attempted to downplay these statements as "interpersonal issues" between plaintiff and defendant Basile, and said that they "had to work together" even though there was no connection in job responsibilities between them. Defendant Kim, the Vice President of GTI Human Resources, called Dr. Kwaramba, and went so far as to attempt to normalize these statements by claiming racism and sexism are "everywhere." Plaintiff nonetheless made an official complaint to GTI's HR department regarding these comments and the continuous harassment of him.

25.     On or about February 27, 2020, plaintiff's supervisor, defendant Brown, in retaliation for the complaint that plaintiff had made, falsely accused him of misusing company funds and responding unprofessionally to the racist comments made about him. Upon information and belief, these accusations were retaliatory and an attempt to terminate him.

26.     On or about March 10, 2020, plaintiff realized that approximately 40 hours of his Paid Time Off ("PTO") was not applied from the previous year. He contacted HR, which stated that they had transferred the time; however, no such time was transferred. Plaintiff still has not been paid for these 40 hours of PTO.

27.     From in or about March 2020 to April 2020, defendants Brown and Ogden) retaliated against plaintiff by attempting to involve him in various actions that constituted security and safety breaches, which he refused to do. Instead, plaintiff insisted on getting the State of New York involved, and insisted on giving the State of New York accurate reports of occurrences of security and safety breaches. In retaliation, both defendant Brown and defendant Katie Ogden attempted to characterize his actions as "disrupting business," "not obeying orders," and not being a "team player."

28.     On or about May 1, 2020, defendant Brown and members of GTI's HR Department, including defendant Kim, launched a retaliatory sham investigation of plaintiff. Additionally, plaintiff was falsely accused of being "violent and egregious," as well as "overreacting," for properly reporting the racist comments made towards him.

29.     Since plaintiff was not at fault and refused to participate in any wrongdoing, HR sent him a threatening email, stating that if he continued to disrupt business, he would be terminated. Plaintiff understood this to mean that if he ever filed a harassment complaint or blew the whistle on safety and security measures again, he would lose his job.

30.     On or about May 7, 2020, defendant Brown attempted to reduce plaintiff's annual income, deny him stock options, and deny him a raise. Only after plaintiff complained was his original income reinstated.

31.     On or about May 15, 2020, in further retaliation, defendant Brown attempted to force plaintiff to use potentially improper and dangerous ingredients in pharmaceutical products. Plaintiff flatly refused to do so, and he insisted that the Company get approval from New York State and provide the State with full disclosure of the ingredients and potential risks to patients if defendant Brown insisted on using such ingredients.

32.     On or about May 28, 2020, without prompting or prior discussion, HR offered plaintiff a severance package. Plaintiff refused and interpreted this as further retaliation for his reports of sexual, racial and national origin discrimination, and his insistence on proper safety and security measures at GTI.

33.     Further, in or around May 2020, when plaintiff raised these allegations regarding racial and national origin discrimination, in response to his concerns the CEO of GTI, defendant

Ben Kovler, together with three other GTI managers, held a presentation company-wide for GTI on how race affects every aspect of American life. The Company required that employees in every state where GTI was operating had to meet together and have a conversation on this subject matter. Plaintiff asked defendants Brown and Ogden on August 12, 2020 whether there were plans for the Company's New York office to have such a meeting. A meeting was scheduled for two weeks after August 12th, but it was cancelled and never took place. Instead, defendant Brown and others in the Company persisted in continuing their campaign of retaliation against plaintiff, resulting in plaintiff's eventual termination.

34.    On or about July 10, 2020, defendant Brown again attempted to force Dr. Kwaramba to breach safety protocols when she requested that plaintiff change the expiration date of an expired drug product in order to continue selling it. Plaintiff flatly refused and notified defendant Brown that he would not do this. Defendant Brown improperly dismissed the risk, arguing that this would "not be a problem." Eventually, the sale was stopped due to plaintiff's refusal to go along with this scheme; however, he was thereafter met with additional hostility and further retaliation by GTI.

35.    On or about August 17, 2020, defendant Brown ordered plaintiff to go to New York City, which was a high-risk zone for COVID-19 at the time. She also changed his job function, making him, in essence, a delivery driver. When plaintiff expressed reluctance to drive to New York City due to the health risks, Ms. Brown retaliated against him, telling plaintiff that he needed to follow orders.

36.    On or about August 28, 2020, plaintiff contacted the CEO of GTI, defendant Kovier, regarding the setting up of a live video face-to-face call with him regarding the ongoing harassment, continuous hostile work environment, and retaliation. Defendant Kovler asked his

executive assistant to set up the meeting; however, defendant Brown interrupted these plans and scheduled the immediate termination of plaintiff. The meeting, therefore, never took place.

37.     In retaliation for his reports of discrimination and his insistence that safety measures not be compromised. Plaintiff's annual salary was reduced, and he was denied stock options and raises.

38.     On or about September 1, 2020, GTI terminated plaintiff in a final act of retaliation, falsely accusing him of "not being efficient, productive or collaborative" as a pretext for his termination. Plaintiff requested proof of these "reasons" for his termination. However, GTI failed to provide any such proof, or any documentation whatsoever.

## JURISDICTION and VENUE

39.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this case arises under federal laws, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

40.     This Court has supplemental jurisdiction over plaintiff's New York State and New York City Human Rights Law claims, and claims under the New York Labor Law, pursuant to 28 U.S. Code § 1367.

41.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because many of the unlawful practices complained of occurred within the Southern District of New York.

42.     Plaintiff has exhausted his administrative remedies, and has been received Notice of Right to Sue from the EEOC, granting him 90 days from September 30, 2021 to file a lawsuit

in federal court. A copy of said letter was received by plaintiff's prior counsel, Solomon Law

Firm LLC on September 30, 2021, as indicated in the attached letter dated October 1, 2021.

## COUNT I

**(Discrimination Based On Race and National Origin in Violation of
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.)**

43.     Plaintiff repeats each and every foregoing paragraph of this Complaint as though

fully set forth herein.

44.     Defendants' conduct constituted unlawful discrimination based upon race and

national origin.

45.     As a result of defendants' discriminatory acts, plaintiff suffered irreparable injury,

monetary damage, mental anguish, emotional distress, humiliation and other compensable

damages. He is, therefore, entitled to an award of damages in an amount to be determined at trial.

## COUNT II

**(Unlawful Retaliation for Engaging in a Protected Activity in Violation of
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.)**

46.     Plaintiff repeats each and every foregoing paragraph of this Complaint as though

fully set forth herein.

47.     Defendants' actions constituted unlawful retaliation against plaintiff for his

having engaged in a protected activity, i.e., recommending to a co-worker that allegations of

sexual harassment be reported to the Company's Human Resources Department and to the

Company's supervisors, and refusing to engage in conduct that would compromise the safety and

security of the products being manufactured and/or the health and safety of the consumers.

48.     As a result of defendants' unlawful retaliation, plaintiff suffered irreparable

injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable

damages. He is, therefore, entitled to an award of damages in an amount to be determined at trial.

## COUNT III

**(Hostile Work Environment  in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.)**

49.     Plaintiff repeats each and every foregoing paragraph of this Complaint as though

fully set forth herein.

50.     Defendants' continuous course of unlawful conduct towards plaintiff, including

harassment and discrimination, created a hostile work environment.

51.     As a result of said hostile work environment, plaintiff suffered irreparable injury,

monetary damage, mental anguish, emotional distress, humiliation and other compensable

damages. He is, therefore, entitled to an award of damages in an amount to be determined at trial.

## COUNT IV

**(Discrimination Based On Race and National Origin in Violation of the New York State Human Rights Law, Human Rights Law § 296 et seq, and the Administrative Code of the City of New York § 8-101 et seq.)**

52.     Plaintiff repeats each and every foregoing paragraph of this Complaint as though

fully set forth herein.

53.     Defendants' unlawful conduct constituted discrimination based on race and

national origin in violation of the New York State and New York City Human Rights Laws.

12

54.     As a result of defendants' discriminatory acts, plaintiff suffered irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages. He is, therefore, entitled to an award of damages in an amount to be determined at trial.

## COUNT V

**(Unlawful Retaliation in Violation of the New York State Human Rights Law, Human Rights Law § 296 et seq, the Administrative Code of the City of New York § 8-101 et seq., and New York Labor Law §§ 215, 240 and 241)**

55.     Plaintiff repeats each and every foregoing paragraph of this Complaint as though fully set forth herein.

56.     Defendants' actions constituted unlawful retaliation against plaintiff for his having engaged in a protected activity, i.e., recommending to a co-worker that allegations of sexual harassment be reported to the Company's Human Resources Department and to the Company's supervisors, and refusing to engage in conduct that would compromise the safety and security of the products being manufactured and/or the health and safety of the consumers.

57.     As a result of defendants' unlawful retaliation, plaintiff suffered irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages. He is, therefore, entitled to an award of damages in an amount to be determined at trial.

## COUNT VI

**(Hostile Work Environment in Violation of the New York State Human Rights Law, Human Rights Law § 296 et seq, and the Administrative Code of the City of New York § 8-101 et seq.)**

58.     Plaintiff repeats each and every foregoing paragraph of this Complaint as though fully set forth herein.

59.     Defendants' continuous course of unlawful conduct towards plaintiff, including harassment and discrimination, created a hostile work environment.

60.     As a result of said hostile work environment, plaintiff suffered irreparable injury, monetary damage, mental anguish, emotional distress, humiliation and other compensable damages. He is, therefore, entitled to an award of damages in an amount to be determined at trial.

## COUNT VII

### (Failure to Pay Wages and other Compensation Pursuant to New York Labor Law)

61.     Plaintiff repeats each and every foregoing paragraph of this Complaint as though fully set forth herein.

62.     By failing to pay plaintiff for all the salary, bonuses and PTO to which he was entitled, and by attempting to reduce plaintiff's wages in retaliation, plaintiff is entitled to money damages pursuant to New York Labor Law §§ 193(1) and 215.

63.     Defendants' failure to pay plaintiff his full wages and other compensation was "willful" within the meaning of Labor Law § 198(1-a).

### JURY TRIAL DEMANDED

64.     Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, plaintiff respectfully requests that this Court:

(a) declare that the acts and practices herein violate Title VII, the Human Rights Law, the City Law, the Labor Law, and New York common law;

(b) enjoin and permanently restrain these violations;

(c) direct defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) direct defendants to reinstate plaintiff to the position he would have occupied but for defendants' discriminatory and unlawful conduct and make him whole for all the earnings and other benefits he would have received but for defendants' unlawful acts and discriminatory treatment, including but not limited to lost wages and other lost benefits;

(e) enter judgment against defendants for damages suffered as a result of plaintiff's reasonable reliance on the promise of the 2021 bonus;

(f) enter judgment against defendants and order them to discharge profits they have accrued as a result of plaintiff's work, services, and labor rendered to them in 2020-2021.

(g) direct defendants to pay plaintiff lost wages as a result of defendants' unlawful wage reduction;

(h) direct defendants to pay plaintiff an additional amount as liquidated damages as provided by the Labor Law;

(i) direct defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering, pursuant to Title VII, the Human Rights Law, the City Law;

(j) direct defendants to pay an additional amount as punitive damages pursuant to Title VII and the City Law;

(k) award plaintiff such interest as is allowed by law;

(l) award plaintiff compensation to adjust for any adverse tax consequences of the award;

(m) award plaintiff her reasonable attorneys' fees and costs pursuant to the Title VII, the

Labor Law, and the City Law;

(n) grant such other and further relief as this Court deems necessary and proper.

Dated: New York, New York
      December 16, 2021

                    McCALLION & ASSOCIATES LLP

                    By: Kenneth F. McCallion (KFM 1591)
                        100 Park Avenue – 16th floor
                        New York, New York 10017
                        (646) 366-0884
                        Fax: 646-373-3704
                        Attorneys for Plaintiff

## CERTIFICATION

I, BRIAN KWARAMBA, the Plaintiff herein, hereby certifies to the best of my

knowledge, information, and belief that:

(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation);

(2) the claims are supported by existing law or by a nonfrivolous argument to change existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

Dated: December 16, 2021

_____

BRIAN KWARAMBA



1330 Avenue of the Americas
Suite 23A
New York, NY 10019
••••
300 Great Oaks Blvd., Suite 312
Albany, NY 12203
••••
1025 Connecticut Ave, NW
Suite 1000
Washington, DC 20036

P:  1-866-8-FedLaw
F:  (202) 688-1896
attorneys@fedemploylaw.com

ADMITTED TO PRACTICE
IN NEW YORK STATE

**<u>Via Email: Brian.Kwaramba@outlook.com</u>**

October 1, 2021

Brian Kwaramba
44B Friars Gate
Clifton Park, NY 12065

**RE:    Kwaramba v. Fiorello Pharmaceuticals
          Our File No. 489**

Dear Dr. Kwaramba:

Yesterday we received notice that your Notice of Right to Sue was filed on the EEOC Portal. As such, even though we do not represent you any longer, and have advised the EEOC of the same, we are enclosing a copy of this Notice for your attention.

Please note that per this notice, you have 90-days from September 30, 2021, or until December 29, 2021, to file a lawsuit in federal court should you intend to do so.  The 90-day deadline that starts running from the date that you receive the Notice of Right to Sue for you to file a lawsuit in Federal Court. **If you choose not to file prior to the end of the 90-day deadline you will permanently forfeit your right to file a lawsuit in federal court connection with this matter.**

Very truly yours,

Kathryn Barcroft, Esq.
kbarcroft@fedemploylaw.com

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Brian Kwaramba<br>44-B Friar'S Gate<br>Clifton Park, NY 12065 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2021-00519 | **Christopher Y. Fuentes,<br>Investigator** | **(929) 506-5300** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Issued)*

cc: | **Director**
**Human Resources**
**FIORELLO PHARMACEUTICALS**
**12 E. 49th Street**
**New York, NY 10017** | **Kathryn Barcroft, Esq.**
**SOLOMON LAW FIRM**
**1330 Avenue Of The Americas, Suite 23-A**
**New York, NY 10019**

Enclosure with EEOC
Form 161-B (11/2020)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date.**  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope and
record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
*issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office.  If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice.**  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*